# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 04-128-08 (RMC) |
| | ) | |
| JAMES D. HILL, | ) | |
| *also known as* FOXY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

In 2005, Defendant James D. Hill pled guilty to conspiracy to distribute and possess with intent to distribute one kilogram or more of a mixture or substance containing phencyclidine (PCP), ecstasy, and fifty grams or more of cocaine base. The Court imposed a sentence of 108 months of incarceration, which Mr. Hill has now served, to be followed by five years of supervised release. Following Mr. Hill's release to the community, the United States Probation Office petitioned the Court to amend his conditions of supervised release to require a sex offender treatment assessment and possible treatment based on Mr. Hill's 2002 conviction for attempted second degree child sexual abuse. Mr. Hill vigorously opposes the proposed amendment and, in turn, asks the Court to vacate the "no contact with minors" supervised release condition imposed at sentencing. Both requests are fully briefed. For the following reasons, the USPO petition will be denied and Mr. Hill's motion will be granted only in part.

# I. FACTS

Along with six co-defendants,[1] Mr. Hill entered a "wired" plea agreement with the government pursuant to Fed. R. Crim. P. 11(c)(1)(C)[2] under which each defendant pled guilty to conspiracy to distribute and possess with intent to distribute one kilogram or more of a mixture or substance containing phencyclidine (PCP), ecstasy, and fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(b)(1)(B)(iii), (b)(1)(B)(iv), and (b)(1)(C) as then effective. *See* Judgment [Dkt. 525] at 1.

Mr. Hill's sentencing was held on April 4, 2006. The Presentence Investigation Report ("PSR") prepared for the Court by the United States Probation Office ("USPO") stated that, in 2002, Mr. Hill was convicted in the District of Columbia Superior Court of attempted second degree child sexual abuse[3] and sentenced to 180 days of incarceration. That conviction

---

[1] The charges to which Mr. Hill pled guilty arose from his involvement with "a massive drug ring" in Northeast Washington, D.C. known as the M Street Crew. *See generally United States v. Wilson*, 605 F.3d 985, 1011 (D.C. Cir. 2010).

[2] Rule 11(c)(1)(C) authorizes plea agreements under which the parties "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply." The parties' "recommendation or request binds the court once the court accepts the plea agreement." *Id.*

[3] The record reflects confusion about the precise charges of which Mr. Hill was convicted in 2002. Mr. Hill's own sentencing memorandum stated that Mr. Hill "was convicted of . . . First Degree Child Sex Abuse and a related Destruction of Property and Assault." *See* Def. Sentencing Mem. [Dkt. 513] at 3. The instant probation petition states that Mr. Hill was convicted of "first degree child sexual abuse and attempted second degree child sexual abuse." *See* Probation Pet. [Dkt. 1200] at 1. Mr. Hill's present counsel, Jonathan Jeffress of the Federal Public Defender's Office, notes that "the PSR . . . clearly state[d] [that] Mr. Hill was only convicted of Attempted Second Degree Child Sexual Abuse; the First Degree Child Sexual Abuse charge was dismissed." Opp. Probation Pet. [Dkt. 1206] at 3 (citing PSR ¶ 42). The Probation Officer later confirmed that Mr. Hill was convicted of attempted second degree child sexual abuse and not first degree child sex abuse. The publicly available records of Superior Court reflect Mr. Hill's guilty pleas in two separate 2002 cases. The Court infers that the attempted second degree child sexual abuse was the sole count of conviction in case 2002 FEL 3500 and the simple assault and destruction of property count were the two counts of conviction

arose from an incident in which "Mr. Hill, who was 20 years old at the time, became involved with a young woman who represented herself to be 16 or 17 years old, but was in fact 14 years old."[4] Def. Opp. Probation Pet. ("Def. Opp.") [Dkt. 1206] at 2. Mr. Hill's 2005 sentencing memorandum stated further that "[h]e was arrested for the [a]buse charges and following said arrest, went to her home, knocked down the door and punched her for lying to him about her age." Def. Sentencing Mem. [Dkt. 513] at 3. As a result of his Superior Court conviction, Mr. Hill was required to register as a sex offender for ten years under District of Columbia law, but no conditions were imposed that limited his contact with children. Def. Opp. at 2; *see also* D.C. Code § 22-4001 *et seq.*

This Court imposed a sentence of 108 months' incarceration with credit for time served, to be followed by five years of supervised release. Judgment at 2–3. The Court imposed two special conditions of supervised release in addition to the standard conditions:

> The defendant shall have no direct, or indirect, contact with children, age 18 or younger, and shall refrain from loitering in any place where children congregate, including but not limited to residences, arcades, parks, playgrounds, and schools. He shall not reside with a child or children under the age off [sic] 18 without the expressed and written approval of the minor's legal guardian and the written permission of the Court.
>
> The defendant shall comply with the Sex Offender Registration requirements in any state or jurisdiction where he resides, is employed, carries on a [sic] avocation, or is a student.

*Id.* at 3. Mr. Hill did not appeal his conviction or sentence.[5]

---

in case 2002 FEL 5030. The Superior Court imposed a sentence of 180 days' incarceration in each case, to run concurrently.

[4] Neither the USPO nor the government has challenged Mr. Hill's characterization of the facts of the incident.

[5] While incarcerated, Mr. Hill filed a *pro se* motion, Dkt. 1050, for a reduction in his sentence due to the 2007 retroactive crack cocaine amendments, *see* U.S.S.G., App. C, Ams. 706, 711 &

3

On January 24, 2013, Mr. Hill was released from incarceration, beginning a term of supervised release that will expire on January 24, 2018. The USPO petitioned the Court on February 15, 2013, for a hearing and modification to Mr. Hill's conditions of supervised release. Specifically, the USPO stated:

> Based on Mr. Hill's prior conviction for . . . Attempted Second Degree Child Sexual Abuse, the probation officer believes the conditions of supervised release should be modified as follows:
>
> Treatment Assessment: You shall participate in and successfully complete a program of sex offender assessment and treatment, as directed by the probation officer. This assessment and treatment may include physiological testing such as a polygraph or plethysmograph testing to assist in planning, case monitoring, and supervision. At the direction of the probation officer, you shall pay for all or a portion of any treatment program. Any refusal to submit to such assessment or tests as scheduled is a violation of the conditions of release. To allow the supervising probation officer to review your course of treatment and progress with the treatment provider(s), you shall waive your right of confidentiality in treatment and sign any necessary releases for access to any records imposed as a consequence of this judgment.

Probation Pet. [Dkt. 1200] ("Petition") at 1–2. The Petition noted that the government did not oppose the request but that Mr. Hill did. *Id.* at 2.

The parties convened on March 22, 2013, to address the Petition. Mr. Hill was present, as were an AUSA, the petitioning Probation Officer, and Mr. Hill's newly-appointed lawyer from the Office of the Federal Public Defender. Counsel for Mr. Hill and Mr. Hill himself voiced strong opposition to the Petition. Addressing the Court on his own, Mr. Hill stated that he found the potential use of a penile plethysmograph[6] particularly repugnant. The

---

713, in June 2008. The Court denied the motion because the quantity of phencyclidine, not crack cocaine, was dispositive in determining Mr. Hill's sentencing guidelines. *See* Order [Dkt. 1079] at 1–2.

[6] "Penile plethysmograph testing is a procedure that 'involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and

Probation Officer noted that an alternative to penile plethysmography was available but continued to request an amendment to Mr. Hill's conditions of supervised release. Upon counsel's request, the Court did not rule immediately and permitted the parties to file additional briefs. Throughout their briefs, the parties refer to the Petition as encompassing a Sex Offender Treatment Assessment—for short, "SOTA."

The Court now has before it two briefs from Mr. Hill's counsel, two briefs from counsel for the government, and a submission from the USPO ("USPO Submission").[7] Mr. Hill continues to oppose the Petition and, in addition, asks the Court to vacate the "no contact with children" supervised release condition imposed at sentencing. *See* Def. Opp.; *see also* Def. Reply [Dkt. 1217]. The government asks the Court to grant the Petition and continue the other terms of release without change. *See* Gov't Mem. [Dkt. 1210] & Gov't Supp. Mem. [Dkt. 1215].

## II. LEGAL STANDARD

18 U.S.C. § 3583(d) governs the imposition of conditions of supervised release at sentencing. In relevant part, that section provides:

> The court may order, as a further condition of supervised release, to the extent that such condition—
>
> (1) is reasonably related to the factors set forth in [18 U.S.C.] section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

---

determining his level of sexual attraction by measuring minute changes in his erectile responses.' . . . [The procedure] has become routine in the treatment of sexual offenders and is often imposed as a condition of supervised release." *United States v. Weber*, 451 F.3d 552, 554 (9th Cir. 2006) (quoting Jason R. Odeshoo, *Of Penology and Perversity: The Use of Penile Plethysmography on Convicted Child Sex Offenders*, 14 Temp. Pol. & Civ. Rts. L. Rev. 1, 2 (2004)).

[7] The Court shared the USPO's Submission with the parties. There being no objection, the accompanying Order directs the Clerk to file the USPO Submission on the docket under seal.

5

> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
>
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);
>
> any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate . . . .

18 U.S.C. § 3583(d).

18 U.S.C. § 3583(e)(2) and Federal Rule of Criminal Procedure 32.1(c) govern modification of supervised release conditions.

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision[.]

18 U.S.C. § 3583(e)(2). Federal Rule of Criminal Procedure 32.1(c) requires that the Court hold a hearing prior to modification, unless the hearing is waived or the modification is favorable to the offender in supervision.

Effectively, then, the substantive guide for considering changes in terms of supervision is a subset of the factors governing sentencing at 18 U.S.C. § 3553(a):

> Although Congress required certain findings prior to termination or revocation of supervised release, it did not require such findings prior to modification. The only statutory requirements for modification are that the district court consider the listed § 3553(a) factors, follow the procedure outlined in Fed. R. Crim. P. 32.1, and ensure that the modified conditions are consistent with the requirements applicable to all conditions of supervised release.

*See United States v. Begay*, 631 F.3d 1168, 1172 (10th Cir. 2011). Those factors made relevant for modification of supervised release conditions by 18 U.S.C. § 3583(e)(2) are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed . . . (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . .
>
> (4) the kinds of sentence and the sentencing range established for-- (A) the applicable category of offense committed by the applicable category of defendant as set forth in the [United States Sentencing Guidelines] . . .
>
> (5) any pertinent policy statement [issued by the United States Sentencing Commission] . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §§ 3553(a)(1), (a)(2)(B)–(D), (a)(4)–(7).

The Third Circuit recently observed that "there appears to be a split" among circuits as to "whether a district court must find new or unforeseen circumstances before it may modify a person's conditions of supervised release." *United States v. Murray*, 692 F.3d 273, 278–79 (3d Cir. 2012) (noting possible split between, *inter alia*, *United States v. Miller*, 205 F.3d 1098, 1101 (9th Cir. 2000) (suggesting changed circumstance required) and, *inter alia*, *Begay*, 631 F.3d at 1170–71 (10th Cir. 2011) (suggesting no changed circumstance required)). The D.C. Circuit has not spoken directly on this issue, although, as Mr. Hill notes, in a case involving a challenge to conditions of supervised release imposed at sentencing, the D.C. Circuit recently

7

observed that a defendant "remains free throughout his term of supervised release to ask the district court to modify the challenged conditions in light of changed circumstances, which the court is statutorily authorized to do." *United States v. Legg*, 713 F.3d 1129, 1134 (D.C. Cir. 2013). Mr. Hill asserts that the Court should seize upon that language (and a sentence in Chief Justice Roberts's 2010 dissent in a restitution case, *Dolan v. United States*, 130 S. Ct. 2533, 2545 (2010)) and require changed circumstances as a predicate to any modification requiring him to submit to a sex offender treatment assessment or further treatment. *See* Def. Reply [Dkt. 1217] at 1–5. Since there are no changed conditions, he asserts the Petition should simply be denied.

Because the Court ultimately concludes that new terms sought by the Petition are not warranted and because the "no contact with children" provision in Mr. Hill's original sentence was overbroad, it reaches no conclusion as to whether a changed circumstance must be found as a predicate to any change in terms of supervision.

### III. ANALYSIS

The Court addresses the Petition before turning to Mr. Hill's counterproposal to vacate the "no contact with children" condition.

#### A. Sex Offender Treatment Assessment

As support for its request that the Court require a Sex Offender Treatment Assessment, Mr. Hill's Probation Officer believed it was appropriate "[b]ased on Mr. Hill's prior conviction for . . . Attempted Second Degree Sexual Abuse." Probation Pet. at 1. The USPO has expanded on its reasoning, both at the hearing and in its Submission, to explain that the conduct underlying Mr. Hill's 2002 conviction is indicative of a need for sex offender treatment, and an Assessment will determine whether such treatment is necessary. *See* USPO Submission at 1–2. The government agrees and argues that an Assessment is appropriate because it "directly

relate[s] to the purpose of the Sex Offender Registration and Notification Act." Gov't Mem. at 4 (citing 42 U.S.C. § 16901).

Mr. Hill opposes the Petition. First noting that the crime of conviction was a narcotics offense, he asserts that "it violates [18 U.S.C. § 3583(d)] to impose sex offender conditions that 'bear no reasonable relationship to the nature of the convicted offense.'" Def. Opp. at 6 (quoting *United States v. Scott*, 270 F.3d 632, 636 (8th Cir. 2001)). Second, Mr. Hill asserts that "[n]othing else in [his] history even tangentially suggests that he has committed or is likely to commit sexual misconduct," in part because "it is plain from the circumstances of the 2002 offense that Mr. Hill was not seeking to be sexually involved with anyone under age, but instead was initially lied to concerning the victim's age." *Id.* at 7; *see also* Def. Reply at 6 (noting that no condition for an Assessment was imposed by the Superior Court judge in 2002). Third, Mr. Hill argues that "[t]he SOTA condition is also not reasonably related to the sentencing goals of deterrence, protection of the public, or rehabilitation" because "[t]here is no evidence that the public will in any way be protected by Mr. Hill's submission to sex offender assessment and treatment." Def. Opp. at 8. Finally, Mr. Hill contends that a Sex Offender Treatment Assessment involves an "extreme deprivation of liberty" that is far greater than necessary to achieve permissible sentencing goals under 18 U.S.C. § 3583(d)(2).[8] Def. Opp. at 9.

The Court has carefully considered the Petition and declines to require a Sex Offender Treatment Assessment. Certainly, the crime of conviction in this case does not support such a condition of release, and the full record now before the Court suggests that Mr. Hill's

---

[8] The USPO has indicated that an alternative to penile plethysmography is available, so the Court does not address the argument that the procedure is an independent violation of relevant statutes and substantive due process. Def. Reply at 9–10. Moreover, the Court does not need to address Mr. Hill's further argument that requiring a sex offender assessment and, perhaps, subsequent treatment, would constitute an impermissible delegation of authority from the Court to the USPO. Def. Mot. & Opp. at 11–12, Def. Reply at 8–9.

earlier conviction resulted from a criminal indiscretion based, in part, on erroneous information.[9]
These facts do not erase Mr. Hill's 2002 conviction for attempted second degree child sexual abuse, as it is now an indelible part of his "history and characteristics." But they do mitigate the concerns for deterrence, public protection, and future treatment. The Court has great confidence in Mr. Hill's Probation Officer and will be vigilant, along with the USPO, in ensuring that this conclusion carries no untoward consequences.

District courts are "afforded wide discretion when imposing terms and conditions of supervised release," *Legg*, 713 F.3d at 1131 (citing *United States v. Accardi*, 669 F.3d 340, 343 (D.C. Cir. 2012)), including imposing conditions that aim at rehabilitation, restitution, or protection of the public in ways that may bear no facial relationship to the offense committed. *See, e.g.*, *United States v. Love*, 431 F.3d 477, 482 (5th Cir. 2005) (affirming condition of payment of outstanding balance of restitution first ordered in an unrelated case). Nonetheless, as the cases cited by Mr. Hill show, courts have repeatedly insisted on a searching inquiry into the need for sex offender treatment when the offense of conviction was not a sex offense. *E.g.*, *Scott*, 270 F.3d at 636 (reversing imposition of sex offender treatment conditions because they were "not reasonably related to the current offense" of bank robbery, there was "no evidence supporting the need for the special conditions" when the sex-offense conviction was fifteen years old, and "the record contain[ed] no information indicating that [the defendant was] likely to repeat the offense, or that additional restrictions on his freedom [were] necessary to deter him from doing so"). Accordingly, the Court declines to require a Sex Offender Treatment Assessment.

---

[9] The parties here are in agreement as to the facts underlying the 2002 conviction—at age 20, Mr. Hill mistakenly believed he was engaging in relations with a girl he believed to be of legal age under D.C. law but who was only 14. The law criminalizes this conduct with zero tolerance for "mistake" as a defense.

### B. "No Contact with Children"

As a condition of his release, Mr. Hill is ordered to have "no contact with children." He argues that this condition must be vacated because it "plainly violates [18 U.S.C. §] 3583(d) under the facts and circumstances of this case and should not have been imposed in the first instance." Def. Opp. & Mot. at 12–13. Mr. Hill contends that the restrictions lack a "reasonable relation" to his situation, that they are impermissibly vague, and that they bar him from "interacting even with *his own* children." *Id.* at 13–14.

The USPO does not address Mr. Hill's motion to vacate the "no contact with children" condition, but the government has filed two briefs in opposition. The government asserts that the restriction should remain in place as a reasonable, permissible restriction under 18 U.S.C. § 3583(d) because it will "ensure the defendant is not a danger to children under the age of 18." Gov't Mem. at 4. Moreover, the government contends that the "no contact with children" restriction will carry out the intent of the Sex Offender Registration and Notification Act, with which Mr. Hill was directed to comply in 2002 following his Superior Court conviction.[10] *Id.* at 3–4.

In concept, the government is correct that a "no contact with children" restriction is reasonably related to the relevant § 3553(a) factors. A "no contact with children" condition is directly responsive to the offending conduct that led to Mr. Hill's 2002 attempted second degree

---

[10] The United States also contends that Mr. Hill has waived any objection to the "no contact with children" issue by failing to challenge it on direct appeal. U.S. Opp. at 2–3. The United States bases this argument in part on *United States v. Legg*, 713 F.3d 1129, 1132 (D.C. Cir. 2013), which applied plain error review to a defendant's challenges to supervised release conditions raised for the first time on appeal. *See* Gov't Supp. Opp. at 1–2. However, *Legg* is inapposite because it speaks to appellate standards of review. Conditions of supervised release are intended to further the goals of sentencing—*i.e.*, deterrence, public protection, etc.—after a period of incarceration. They intentionally are subject to change as an offender's situation or conduct—or the law—warrant. *See* 18 U.S.C. § 3583(e)(2); Fed. R. Crim. P. 32.1(c).

child sexual abuse conviction and addresses "the need for the sentence imposed . . . to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(C).  Moreover, it affords narrowly tailored and proportionate deterrence to the commission of any further criminal errors in judgment by Mr. Hill.  *Id.* § 3553(a)(2)(B).

However, Mr. Hill's protestations that the condition is overly vague and restrictive are well founded.  As currently drawn, the "no contact with children" condition provides:

> The defendant shall have no direct, or indirect, contact with children, age 18 or younger, and shall refrain from loitering in any place where children congregate, including but not limited to residences, arcades, parks, playgrounds, and schools.  He shall not reside with a child or children under the age off [sic] 18 without the expressed and written approval of the minor's legal guardian and the written permission of the Court.

Judgment at 3.  The Second Circuit found a similar condition of supervised release "ambiguous and . . . excessively broad," and this Court concludes that the instant language should be clarified.  The present text impermissibly provides no clarity for when Mr. Hill is interacting with his own children, not even with permission and the supervision of their legal guardians.  *See Goings v. CSOSA*, 786 F. Supp. 2d 48, 71–73 (D.D.C. 2011) (surveying cases in which "[c]ourts have struck down provisions restricting sex offenders from interacting with their own children as unconstitutional because they were not reasonably related or supported by the record" where sex offenders "had a history of far more egregious behavior than that of the plaintiff," a man with a conviction for sexual battery for sexual relations with a sixteen-year old girl); *see also United States v. Voelker*, 489 F.3d 139, 153–55 (3d Cir. 2007) (finding plain error in imposition of condition prohibiting defendant "from associating with minors without the prior approval of the Probation Officer and mandat[ing] that any such contact be in the presence of an adult who is familiar with [the defendant's] criminal background" because there is no compelling

state interest in curtailing parental rights absent "sufficient evidence" to indicate that "children are potentially in danger from their parents" (internal quotation marks and citation omitted)).

The Court will thus modify the "no contact with children" provision accordingly. The revised condition will read:

> The defendant shall have no contact with children, age 18 or younger, who are not his children. He shall have no contact with his own children without the expressed, written approval of the guardian(s) of those children. The defendant shall refrain from loitering where children congregate, in arcades, in or near schools, playgrounds, and day care centers unless he is in the company of his own children. He shall not reside with a child or children under the age of 18 without the expressed, written approval of the minor's legal guardian and the written permission of the Court.

This amended provision is reasonably related to the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)–(D), and (a)(4)–(7) and involves no greater deprivation of liberty than is reasonably necessary. *See* 18 U.S.C. § 3583(d).

### IV. CONCLUSION

For the foregoing reasons, the Court will deny the Petition and will grant in part Mr. Hill's motion to vacate the "no contact with children" condition. A memorializing Order accompanies this Memorandum Opinion.

DATE: August 12, 2013

/s/
ROSEMARY M. COLLYER
United States District Judge